# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1550

NATHANIEL LINDELL,

Plaintiff-Appellant,

v.

SCOTT MCCALLUM, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 02-C-473-C—**Barbara B. Crabb**, Chief Judge.

_____

SUBMITTED OCTOBER 31, 2003—DECIDED DECEMBER 12, 2003

_____

Before POSNER, ROVNER, and EVANS, Circuit Judges.

POSNER, Circuit Judge. Nathaniel Lindell, an inmate at Wisconsin's Secure Program Facility (WSPF), alleges in a 62-page complaint that state officials and prison staff are violating his civil rights by preventing him from practicing his religion and forcing him to participate in programs that violate his religious beliefs. Although he qualified to proceed in forma pauperis and, as best we can tell, has managed to avoid accumulating three strikes on the basis of his numerous previous lawsuits (though this is something for the district judge to determine on remand), the judge refused his request to proceed in forma pauperis, dismissed his

complaint even though acknowledging that it probably states a claim, and barred him from bringing any future lawsuit unless he can show that he can afford to prosecute it or that he is in imminent danger of serious physical injury.

Lindell claims to be a follower of Wotanism, which he also calls Odinism or Asatru and describes as a nature-based religion rooted in ancient Indo-European or "Aryan" tribal culture. It is an obscure religion, but he didn't make it up. See J. Gordon Melton, *Encyclopedia of American Religions* 847-48 (4th ed. 1994). In some versions, it declares the "Nordic Race" the chosen people, *id.*, implying white supremacy, but in other versions apparently not. See "The Odinic Rite," http://www.odinic-rite.org/index2.html (visited Nov. 10, 2003). Lindell, however, has been described without contradiction as an "avowed White Supremacist."

After arriving at WSPF, he sought to have the prison authorities acknowledge Wotanism as a religion. But they refused, explaining that they would neither acknowledge racist religions nor endorse groups disruptive of prison life. Lindell charges that the prison authorities interfere with the practice of his religion by, for example, destroying mail having Wotanist religious content, ignoring Wotanist dietary restrictions, housing Wotanists in separate living areas so that they cannot congregate or discuss their beliefs, and excluding Wotanist literature and videos from the religious materials available to prisoners. He claims that by doing this the authorities infringe both his First Amendment right to exercise his religion freely and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc. This appears to be his tenth suit against the Wisconsin prison system and the sixth in federal court.

The district judge reviewed Lindell's prison trust fund records and acknowledged that Lindell was unable to pre-pay the entire filing fee. But rather than grant his petition for leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(a)(1), she took the complaint under advisement for later screening under section 1915(e)(2). That subsection authorizes dismissal at any time if a complaint is frivolous, malicious, or fails to state a claim. But in her subsequent review of Lindell's complaint the judge concluded that several of his "claims under R.L.U.I.P.A. are likely to survive screening, even if some of his Constitutional claims fail." Nevertheless she denied him pauper status and refused to allow his complaint to be filed because

> I do not intend to allow petitioner to begin another lawsuit that he cannot afford to prosecute. . . . He avoids the restraints Congress intended to place on frivolous prisoner litigation under 28 U.S.C. § 1915(g) by loading his complaints with so many issues that a handful inevitably survive the liberal pleading review applicable to pro se litigation. . . . Once a lawsuit has begun, it is almost impossible to predict how much it will cost to prosecute it. It is evident, however, that plaintiff will not be able to pay the cost of mailing, let alone photocopy-ing, for this case and nine others without exceeding his legal loan limits. If he is allowed to file this suit, the costs of prosecuting it will reduce the funds available to prosecute his other cases, leaving courts in the quan-dary of having to choose between dismissal or an order directing the state to advance funds to petitioner in excess of the statutory limit. To avoid this, I will deny petitioner leave to proceed *in forma pauperis*. If petitioner wants to bring another lawsuit in this court, he will have to show first that he has the money to prosecute the suit to completion or that he is under imminent danger of serious physical injury if the lawsuit is not

allowed. As a practical matter, petitioner will be unable to make the financial showing required so long as he has any other lawsuit pending in this district.

Lindell argues that because he has no history of frivolous litigation, the district judge abused her discretion when she dismissed this suit and barred future suits.

The district judge found that Lindell had established the requisite indigence, 28 U.S.C. § 1915(a), (b)(1), and had not accumulated the three strikes (indeed, any strikes) that would prevent him from proceeding *in forma pauperis* despite his indigency. § 1915(g). All that was left for the judge to do was to review the complaint to determine whether it was frivolous or malicious, failed to state a claim, or sought damages from an immune defendant. §§ 1915(e), (g), 1915A. Because Lindell is seeking injunctive relief for continuing violations of his civil rights, as well as damages for past violations, immunity could not be a complete bar to his suit. *Williams v. Wisconsin*, 336 F.3d 576, 580-81 (7th Cir. 2003); *MCI Telecommunications Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323, 337 (7th Cir. 2000).

Lindell's complaint indeed states a claim under RLUIPA, and we are given no reason to believe that it might nonetheless be frivolous or malicious. *Hutchinson v. Spink*, 126 F.3d 895, 900-01 (7th Cir. 1997); *Gammon v. GC Services Limited Partnership*, 27 F.3d 1254, 1256 (7th Cir. 1994); *Horsey v. Asher*, 741 F.2d 209, 213 (8th Cir. 1984). "Malicious" in this context is sometimes treated as a synonym for "frivolous," e.g., *id.* at 213, but we think is more usefully construed as intended to harass. E.g., *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993); *Crisafi v. Holland*, 655 F.2d 1305, 1309 (D.C. Cir. 1981); *Philips v. Carey*, 636 F.2d 207, 208-09 (10th Cir. 1981) (per curiam); *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987).)

Enacted in 2000 in the wake of *City of Boerne v. Flores*, 521 U.S. 507 (1997), which had limited the applicability of the Religious Freedom Restoration Act to federal officers and agencies, *O'Bryan v. Bureau of Prisons*, No. 02-4012, 2003 WL 22533454, *1-2 (7th Cir. Nov. 10, 2003), RLUIPA forbids (so far as bears on this case) prisons that receive federal funding to burden a prisoner's exercise of religion substantially unless the prison both has a compelling interest and employs the least restrictive means possible for protecting that interest. 42 U.S.C. § 2000cc-1. *Charles v. Verhagen*, No. 02-3572, 2003 WL 22455960 at *7 (7th Cir. Oct. 30, 2003), and *Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002), hold that 42 U.S.C. § 2000cc-1 is a valid exercise of Congress's power under the Spending Clause, U.S. Const. art. I, § 8, cl. 1, although *Cutter v. United States*, Nos. 02-3270 *et al.*, 2003 WL 22513973, at *10 (6th Cir. Nov. 7, 2003), holds that section 2000cc-1 violates the First Amendment's establishment of religion clause.

The Wisconsin prison system receives federal funding, *Charles v. Verhagen*, *supra*, at *2, so to state a claim under RLUIPA a Wisconsin prisoner need allege only that the prison has substantially burdened a religious belief, which Lindell has done. We are given no reason to think that the fact that Wotanism is not a mainstream religion is disqualifying, see *Thomas v. Review Board*, 450 U.S. 707, 714 (1981); *Dettmer v. Landon*, 799 F.2d 929, 932 (4th Cir. 1986); *International Society for Krishna Consciousness, Inc. v. Barber*, 650 F.2d 430, 440 (2d Cir. 1981); *Rust v. Clarke*, 851 F. Supp. 377, 378 (D. Neb. 1995) (Asatru/Odinism), though that is another issue we need not decide; and while the Wisconsin prison authorities may be able to demonstrate a compelling interest in suppressing it if indeed it is racist, *Ochs v. Thalacker*, 90 F.3d 293, 296-97 (8th Cir. 1996); cf. *Sasnett v. Sullivan*, 91 F.3d 1018, 1023 (7th Cir. 1996); *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996); *Stefanow v. McFadden*,

103 F.3d 1466, 1472-74 (9th Cir. 1996); *Marria v. Broaddus*, 2003 WL 21782633, *14-18 (S.D.N.Y. July 31, 2003), they have made no attempt to do this, the case having been dismissed without any submission by the defendants. Cf. *Hutchinson v. Spink, supra*, 126 F.3d at 899-900.

We sympathize with the frustration of the able and busy district judge faced by Lindell's repeated complaints stuffed with material that is irrelevant and difficult even to understand. But the Federal Rules of Civil Procedure provide a remedy that is not the remedy the judge chose. If a complaint's length and lack of clarity make it unintelligible, dismissal under Fed. R. Civ. P. 8(a) is permitted, *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003); *Davis v. Ruby Foods, Inc.*, 269 F.3d 818 (7th Cir. 2001); *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000); *In re Westinghouse Securities Litigation*, 90 F.3d 696, 703 (3d Cir. 1996); *Kuehl v. FDIC*, 8 F.3d 905, 908 (1st Cir. 1993), though leave to replead should ordinarily be granted. 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1281 (2003). The district judge might have done that here but instead she undertook to screen the complaint, and having done so found that it states a claim under RLUIPA—at which point she couldn't dismiss the entire suit "merely because [the complaint] contains repetitious and irrelevant matter, a disposable husk around a core of proper pleading," *Davis v. Ruby Foods, Inc., supra*, 269 F.3d at 820, although she could of course have dismissed any parts of the complaint that do not state a claim.

The judge expressed concern regarding Wisconsin's subsidization of Lindell's litigation costs through a program that advances funds to inmates for expenses such as filing fees, paper, and postage. Wis. Adm. Code § DOC 309.51; *Luedtke v. Bertrand*, 32 F. Supp. 2d 1074, 1076 (E.D. Wis. 1999). Determining that Lindell has already borrowed more

than the statutory limit of $200 a year, the district judge enjoined him from litigating further, lest she have to order Wisconsin to lend him more money. But there is no possibility that she would have to order Wisconsin to lend him a penny. The Wisconsin statute is not intended for the funding of prisoners' suits—as explained in the *Luedtke* case, the loans authorized by the statute are not "funds which are disbursed or credited to an inmate's account to be used as he wishes" but rather "simultaneous credits and debits . . . for the sole purpose of enabling prisoners to purchase 'paper, photocopy work, or postage' on credit." And Lindell has "no constitutional entitlement to subsidy," *Lewis v. Sullivan*, 279 F.3d 526, 528 (7th Cir. 2002), to prosecute a civil suit; like any other civil litigant, he must decide which of his legal actions is important enough to fund. *Lucien v. DeTella*, 141 F.3d 773, 774 (7th Cir. 1998). If he is able to convince Wisconsin to extend him more credit for his legal endeavors, in apparent violation of Wisconsin law, any debt arising from that extension of credit will be a matter strictly between him and Wisconsin, and not any business of the federal courts.

Lindell's remaining arguments have insufficient merit to warrant discussion. Nevertheless, as we have explained, the judgment must be, and it is, vacated, and the case remanded for further proceedings.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*