**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted November 29, 2005[*]
Decided November 30, 2005

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-2098

|  |  |
|---|---|
| BILL O. McCLAIN, JR., | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division |
| *Plaintiff-Appellant,* | |
| *v.* | No. 1:03-cv-1140-SEB-VSS |
| DAVID ROGERS, et. al., | Sarah Evans Barker, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Indiana inmate Bill McClain, Jr., brought suit under 42 U.S.C. § 1983, claiming that two guards and a chaplain prevented him from praying in the recreation yard and worshiping together with other adherents of his faith, in violation of his First Amendment right to the free exercise of religion.  The parties

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record.  *See* Fed. R. App. P. 34(a)(2).

filed cross-motions for summary judgment, and the district court granted the defendants' motion. McClain timely appealed and we now affirm.

McClain practices Asatru, a "nonmainstream" religion, *see Cutter v. Wilkinson*, 125 S. Ct. 2113, 2116 (2005); *Lindell v. McCallum*, 352 F.3d 1107, 1108 (7th Cir. 2005) (noting ties to belief in white supremacy), and was praying alone in his prison's recreation yard when the defendant guards told him to stop. They informed him that he could pray in his cell or in the chapel, but not in the yard. McClain complained to the chaplain, who backed the guards. McClain brought suit based on this incident; he also complained that the chaplain does not allow Asatruars to worship in groups, though members of other religions are permitted to do so.

At summary judgment, the defendants asserted that they were following policy. The guards, through answers to interrogatories, maintained that they were merely enforcing a provision of the prison's Offender Handbook, which prohibits "religious meetings or gatherings on the yard." Likewise, the chaplain testified by affidavit that he was following a systemwide policy of the Department of Corrections that permits adherents of some religions to worship as a group, but presently denies that privilege to Asatruars. The group-worship policy was explained by a former DOC Director of Religious Services and Community Involvement, who now serves as a consultant on religious issues. She testified by affidavit that the DOC does not consider group worship to be a required tenet of the Asatru faith, and does not permit Asatruars to worship together because of security risks arising from the religion's ties to white-supremacist views. She also averred that applications for group worship must be sponsored by a non-confined religious official, and that inmates who wish to worship together must be led by an outside representative who has submitted to a criminal background check, among other requirements. According to the consultant, Asatruars applied for permission to worship as a group in 2000 but did not satisfy these conditions, and no other request had been received since then.

In granting summary judgment for the defendants, the district court applied the test announced in *Turner v. Safley*, 482 U.S. 78, 89 (1987), and held that, although the policies enforced by the defendants infringed on McClain's practice of his religion, the undisputed evidence showed those policies to be reasonably related to legitimate penological interests and thus valid. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) (applying *Turner* standard to prison regulation affecting religious practice). The district court then denied McClain's motion to compel discovery about the treatment of other religions and gangs, and denied his request for injunctive relief. McClain, who is white, timely moved for reconsideration on the basis that the challenged policies draw racial classifications and accordingly violate his right to equal protection. The court denied that motion, reasoning that the

lawsuit does not claim a violation of equal protection and that, regardless, there was no evidence that the challenged policies were based on race.

On appeal McClain effectively abandons his free exercise claim and argues that the district court should have discerned an equal protection claim in his complaint.  He argues that the consultant's statement that Asatru attracts white supremacists supports his belief that the policies the defendants enforced are based on race.  And since racial classifications were at issue, he continues, the district court should have applied strict scrutiny under *Johnson v. California*, 125 S.Ct. 1141, 1148 (2005), not the First Amendment analysis under *Turner*.

McClain raised his equal protection challenge too late.  *See Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003); *Laborers' Int'l Union of N. Am. v. Caruso,* 197 F.3d 1195, 1197 (7th Cir. 1999).[1]  Moreover, *Johnson* has no application here because the concern that Asatruars are more likely to espouse a belief in white supremacy than adherents of other faiths is premised on the need to maintain prison security, not on race, and under *Turner* would be deemed a neutral basis for classification.  *See Thornburgh v. Abbott*, 490 U.S. 401, 415-16 (1989).  Thus, recasting his religion claims as one under the Equal Protection Clause of the Fourteenth Amendment cannot benefit McClain.  *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (holding that complaint alleging interference with inmate's observance of religious fast raised free exercise challenge; separate equal protection analysis was unnecessary); *Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988) (noting that religious discrimination is governed by the religion clauses of the First Amendment).

Finally, McClain argues for the first time in his reply brief that the district court should have recognized a factual dispute about whether the asserted prison policy prohibiting prayer in the recreation yard has been interpreted correctly by the defendants and applied uniformly to members of all religions.  That the policy literally prohibits religious "meetings or gatherings" in the yard, and yet the defendants admitted that McClain was praying alone, does suggest a question of

---

[1] We note also that in the district court McClain never raised a claim under the Religious Land Use and Institutionalized Persons Act of 2002, 42 U.S.C. §§ 2000cc to 2000cc-5.  Thus, to the extent that McClain makes reference in his brief to *Cutter v. Wilkinson*, 125 S. Ct. 2113, 2116 (2005), which holds that RLUIPA does not violate the Establishment Clause, we do not address his argument.  *See King v. Ill. State Bd. of Elections*, 410 F.3d 404, 424 (7th Cir. 2005) (arguments raised for the first time on appeal are waived).

interpretation.  And an April 2004 notice inviting Christians to gather with the chaplain on the ball field for Easter services, a copy of which McClain attached to his unsworn response to the defendants' motion for summary judgment, might have raised a question about the enforcement of this policy.  But the notice was never authenticated and was not properly before the district court, *see* Fed. R. Civ. P. 56(e); *Woods v. City of Chicago*, 234 F.3d 979, 989 (7th Cir. 2000), and McClain offered no other evidence contradicting the defendants' understanding of the yard policy.  In any event, arguments raised for the first time in a reply brief are waived.  *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005).

AFFIRMED.