**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 18, 2006[*]
Decided October 31, 2006

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-4627

| | |
|---|---|
| NATHANIEL A. LINDELL,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>PETER HUIBREGTSE, et al.,<br>    *Defendants-Appellees*. | Appeal from the United States District Court for the Western District of Wisconsin<br><br>No. 05-C-003-C<br><br>Barbara B. Crabb,<br>*Chief Judge*. |

**ORDER**

Nathaniel Lindell, an inmate at the Wisconsin Secure Program Facility (WSPF), is a frequent litigant with seven prior appeals decided in this court. Lindell's suits typically involve his efforts to practice Wotanism, a nature-based, pagan religion that is associated with white-supremacist ideology. Wotanism once again is at the core of this appeal and the suit under 42 U.S.C. § 1983 that prompted it. Lindell claims that he was disciplined improperly for possessing a book and sending two letters to fellow

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

inmates. The book and the letters were confiscated, and Lindell was punished with disciplinary segregation. He has raised a number of constitutional and statutory arguments based on these incidents.

In the first incident, Lindell was disciplined for sending another inmate a letter recounting that a third prisoner had been disciplined for being a member of the "AC," or Aryan Circle, a white-supremacist group that is prohibited by the prison. Lindell also commented in this letter that he "could think of 88 reasons why America is fucked up." Prison officials regard "88" as white-supremacist code for "Heil Hitler," a term associated with unsanctioned groups at the prison. The prison accordingly disciplined Lindell for violating Wis. Admin. Code Doc. § 303.20(3), which prohibits inmates from participating in "any activity with an inmate gang" or possessing "any gang literature, creed, symbols or symbolisms." An inmate gang is defined as "a group of inmates which is not sanctioned by the warden." Wis. Admin. Code Doc. § 303.02(11).

In the second incident, Lindell sent another inmate a letter in which he remarked that there was "not a wood in sight" on his cell block. Prison officials maintained that "wood" refers to a faction of the Aryan Circle, and they again disciplined Lindell for violating § 303.20(3).

In the final incident, prison guards discovered a copy of the "88 Precepts" in Lindell's cell. According to prison officials this publication is often used by white-supremacist gangs, and the "88" in the title is, like the term used in Lindell's letter, a code for "Heil Hitler." Lindell was consequently disciplined under § 303.20 for possessing gang materials.

As we read his complaint, Lindell principally claims that prison officials violated his rights under the Establishment Clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, by disciplining him for possessing a copy of the "88 Precepts," a text he describes as essential to his religious practice. He also claims that officials violated his rights under the Free Speech Clause when they disciplined him for sending the letters. As to the letters, Lindell says that the regulation he was punished for violating, Wis. Admin. Code Doc. § 303.20, is unconstitutional both facially and as applied. The district court dismissed each of these claims at the screening stage, but it construed Lindell's complaint to include a separate claim that the defendants conspired to violate his equal protection rights. The court allowed Lindell to proceed with this putative claim, but it eventually dismissed the claim on the defendants' motion for failure to exhaust administrative remedies.

We may quickly dispense with Lindell's claim that prison officials violated the Establishment Clause by banning the "88 Precepts" while allowing the Bible and the Koran. The district court dismissed this claim at screening because Lindell already was pursuing a nearly identical claim in another of his lawsuits. Lindell argues that this

decision was error because the "88 Precepts" was not one of the books at issue in the other case. But in the other litigation, the district court concluded at summary judgment that the Bible and the Koran are not similar to the books Lindell requested because the Bible and the Koran, unlike Lindell's books, are each the principal holy book for a religion. *Lindell v. Casperson*, 360 F. Supp.2d 932, 956-57 (W.D. Wis. 2005), *aff'd, Lindell v. Govier*, 169 Fed. Appx. 999 (7th Cir. 2006) (approving district court's analysis). Therefore, the court reasoned, Lindell could not show that prison officials were favoring other religions over Wotanism because prison policy allowed adherents of Wotanism to possess a Bible, Koran, or "equivalent religious book." *Id*. at 956-57. The same logic would apply to the "88 Precepts." Even now Lindell does not suggest that the "88 Precepts" is the principal holy book for Wotanism or is in any way equivalent to the Bible or the Koran, and we have held before that prisons can constitutionally deny Christian inmates supplemental religious texts, *see Tarpley v. Allen County, Ind.*, 312 F.3d 895, 898-99 (7th Cir. 2002). At best Lindell says that this book would be essential to the practice of his religion, but we have made clear that the religion clauses do not prevent prison officials from enforcing neutral rules. *Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006). Accordingly, the district court was correct to dismiss this claim.

We turn, then, to RLUIPA and the Free Speech Clause. At the outset we note that this court recently held in *Koutnik v. Brown*, 456 F.3d 777, 782-84 (7th Cir. 2006), that § 303.20 is not unconstitutionally vague or overbroad. Thus, the district court properly dismissed this claim, and we need not discuss it further. The analysis of Lindell's RLUIPA and "as-applied" free-speech claims overlaps. Lindell challenges his punishment for possessing the "88 Precepts" under RLUIPA, and he challenges his punishment for the two letters under the Free Speech Clause. Under RLUIPA, prison officials may substantially burden an inmate's exercise of his religion if they do so in furtherance of a compelling interest and use the least restrictive means possible. *Lindell v. McCallum*, 352 F.3d 1107, 1110 (7th Cir. 2003). Under the First Amendment, prison officials may restrict correspondence between inmates as long as their purpose in doing so is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89, 91 (1987). In this case, the defendants maintain that they punished Lindell for participating in gang activity. Lindell does not disagree that curbing gang activity is a legitimate—indeed compelling—penological interest, nor does he contend that prison officials had a less-restrictive means of pursuing their objective than confiscating his materials and punishing their possession if the book and letters really include gang-related content. Instead, Lindell argues that the "88 Precepts" and his letters are not gang-related at all and that the defendants did not prove otherwise at his disciplinary hearings.

Given this framing of the issue, however, we conclude that Lindell pleaded himself out of court by submitting the conduct reports and witness statements presented at his disciplinary hearings. Because these documents were attached as

exhibits to his complaint, they are deemed to be a part of the complaint and were properly considered by the district court at the screening stage. Fed. R. Civ. P. 10(c); *see also Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005); *Int'l Mktg. Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 729 (7th Cir. 1999). These exhibits include statements by two prison officers trained as a Disruptive Group Coordinator, and the officers represent that "A.C." is an abbreviation for the Aryan Circle, an unsanctioned group at the prison; that "wood" means "peckerwood," which is a faction of the Aryan Circle; that the number "88" is a code among white-supremacist groups for "Heil Hitler," a term associated with unsanctioned groups; and that the "88 Precepts" is literature often used by white-supremacist gangs. We have said in the First Amendment context that whether or not particular speech is gang-related "is an assessment that prison staff is uniquely suited to make." *Koutnik*, 456 F.3d at 785; *see also Rios v. Lane*, 812 F.2d 1032, 1037 (7th Cir. 1987). Lindell's contention that prison officials lacked evidence to discipline him is plainly refuted by the materials submitted, and given the judgment of prison officials trained in recognizing gangs that Lindell's materials were gang-related, we do not see how Lindell could have a claim under either RLUIPA or the Free Speech Clause. Therefore, we affirm the district court's decision dismissing these claims.

Finally, we turn to Lindell's putative claim that prison officials conspired to deprive him of his equal protection rights. Although the district court first constructed and then dismissed this claim for failure to exhaust, it suffers from a fundamental problem: Lindell's constitutional claims are founded on the First Amendment, and not other constitutional provisions. Lindell's constitutional claims about the letters and the "88 Precepts" arise under the Establishment Clause and the Free Speech Clause of the First Amendment. Lindell cannot save or expand those claims by attaching an "additional constitutional label" to them. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) ("constitutional claims must be addressed under the most applicable provision") (citing *Graham v. Connor*, 490 U.S. 386 (1989)). Accordingly Lindell could not make out an equal protection claim, and the district court should not have dismissed this putative claim without prejudice for failure to exhaust. To the extent that Lindell's complaint includes such a claim, the district court should have dismissed it with prejudice, and we modify the judgment to that extent.

Lindell's remaining claims are too frivolous to warrant discussion, and we accordingly conclude that the district court correctly dismissed them at screening. We also note that Lindell has incurred one of his allotted "strikes" under 28 U.S.C. § 1915(g) for filing this appeal.

AFFIRMED AS MODIFIED.